UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALEXIA KNOX,

        Plaintiff,

  v.

WISCONSIN DEPARTMENT OF TRANSPORTATION,

        Defendant.

Case No. 23-cv-0655-bhl

## ORDER GRANTING MOTION TO DISMISS

      On May 25, 2023, Alexia Knox, a former Wisconsin Department of Transportation (DOT) employee, filed a *pro se* complaint, alleging that the DOT had discriminated against her in violation of the Americans with Disabilities Act (ADA). (ECF No. 1.) On June 20, 2023, the DOT moved to dismiss Knox's complaint, invoking sovereign immunity under the Eleventh Amendment. (ECF Nos. 6 & 7.) After first asking the Court to order the DOT to provide a more definite statement and citing the inapplicable Fed. R. Civ. P. 12(e), (ECF No. 11), Knox has now filed both opposition and surreply briefs, challenging the DOT's arguments. (ECF Nos. 15 & 17.) Because the DOT is correct that sovereign immunity protects it from suit under the ADA, Knox's complaint must be dismissed. But the Court will allow Knox a chance to amend her complaint to try to assert plausible claims that are not subject to the DOT's sovereign immunity defense.

### FACTUAL BACKGROUND[1]

      Knox began working for the DOT in November 2021 as a Communications Specialist Senior. (ECF No. 1 at 3, 6.) She suffers from an anxiety disorder. (*Id.* at 6.) On November 28, 2021, within the first month of her employment, Knox's supervisor, Anne Reshadi, told Knox that she must "prove to [Reshadi] and the other staff engineers that [she] could do [her] job." (*Id.* at 6–7.) On December 1, 2021, Reshadi told Knox that she was "not trusted to perform [her] job duties." (*Id.* at 6.) In that same conversation, Reshadi redirected Knox "to do something else" and

---

[1] This Background is derived from Knox's complaint, ECF No. 1, the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

referred to Knox as "frustrated, insubordinate, and having an attitude." (*Id.*) Knox told Reshadi that she had an anxiety disorder. (*Id.*) Reshadi and another DOT manager, Stacey Pierce, then assigned Knox additional work outside of her job function with quickly-approaching deadlines. (*Id.*) Knox stated that this conversation "humiliated" her and caused her to "seek medical attention," because the tasks seemed designed to "overwhelm" her and "trigger [her] anxiety." (*Id.* at 6, 8.) Knox emailed her grievance statement to the DOT on December 3, 2021. (*Id.* at 6–7.)

Further grievances followed. Knox had approved time off on December 6, 2021, but her supervisor emailed her the same day and told her that, even though the time off was approved in the DOT's human resources software, she would still "report the approved time as a NO CALL/NO SHOW." (*Id.* at 7.) Reshadi proceeded to call Knox multiple times and email her five times on December 6 and 7, 2021, despite Knox having "shared that her emails and voicemails were oppressive and required her to seek medical attention." (*Id.*) Knox's doctor ultimately submitted documentation excusing her from work for December 7 through 10, 2021. (*Id.*)

Knox filed another grievance on December 9, 2021. (*Id.*) On this form, Knox stated that her work environment was hostile due to her race, disability, and mishandling of her job description. (*Id.*) Knox further stated that Reshadi's comments regarding Knox's "having an attitude" stereotyped her as a black woman. (*Id.*) Knox's medical provider again requested time off on December 13 through 17, 2021. (*Id.* at 8.) Reshadi continued to send Knox emails during her medical leave. (*Id.*) On December 15, 2021, Reshadi received notice of Knox's reasonable accommodations for her return to work on December 18. (*Id.*) But Reshadi did not approve these accommodations, and instead sent Knox an email on December 17, 2021, informing Knox she could take unpaid medical leave through January 2, 2022. (*Id.* at 9.)

At some point in December of 2021, Knox requested accommodation "of a different position that fell within [her] medical restrictions." (*Id.* at 3.) The DOT told her it would work with her to find another suitable position. (*Id.*) One of the DOT's programs was the Reasonable Accommodations Alternate Position Search Program (RAAPSP). (*Id.* at 4.) The RAAPSP "required employees who can no longer perform essential functions of [her] job to move to another position or transfer," and if a suitable position "is not found within thirty days, the employee is involuntarily medically separated." (*Id.*) DOT suggested Knox participate in the RAAPSP, so Knox provided a resume listing "years of experience and a master's degree in her field." (*Id.*) Knox applied to several positions in RAAPSP in January and February of 2022, and told the DOT's

Human Resources officer Regina Howard that she did so (despite DOT's insistence that Knox never informed Howard). (*Id.* at 4–5.)

Knox had over five interviews for the Research Communications Coordinator position but did not receive an offer. (*Id.*) In October of 2022, Knox asked for feedback from DOT's Human Resources department regarding her failure to receive an offer. (*Id.* at 5.) Human Resources told Knox to make sure she answered all parts of the interview questions completely. (*Id.*) They also encouraged Knox to prepare for the interviews and that "it is okay to be nervous." (*Id.*) Knox felt that "nervous" was a derogatory comment related to her anxiety disorder. (*See id.*) Ultimately, the DOT involuntarily medically separated Knox's employment on May 3, 2022. (*Id.* at 11.)

Knox filed a charge of discrimination with the EEOC, which the EEOC declined to investigate further on April 27, 2023. (ECF No. 1-1 at 1.) Knox received a right to sue notice the same day. (*Id.*) She seeks $350,000 in compensatory damages and "[a]n order placing [her] in the position she would have been in had there been no violation of her rights and … restraining the respondent from further acts of discrimination related to" the RAAPSP. (ECF No. 1 at 12.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 564–65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Id.* at 565 (citing *Iqbal*, 556 U.S. at 678).

## ANALYSIS

The DOT moves to dismiss Knox's complaint on grounds that the state of Wisconsin and its agencies have Eleventh Amendment immunity from suit for claims under Title I of the ADA. (ECF No. 7 at 3.) Knox counters that the DOT "[c]annot [i]nvoke [s]overeign [i]mmunity [u]nder the 11th [a]mendment." (ECF No. 15 at 4–5.) She also argues that the DOT's RAAPSP program does not "align with Wisconsin statutes" or the ADA. (*Id.* at 2–4.) The DOT is correct that it is

immune from suit for Title I claims under the Eleventh Amendment, and because Knox's allegations cannot sustain a claim under any other section of the ADA, her complaint must be dismissed.

I. **The DOT Is Immune from Suit for Knox's Title I Claims.**

The Americans with Disabilities Act (ADA) "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004). Title I specifically provides that a "covered entity" may not discriminate against "a qualified individual on the basis of disability" regarding "job application[s]. . . hiring, advancement, or discharge of employees, employee compensation, job training," and any "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity" is "an employer, employment agency, labor organization, or joint labor-management committee." § 12111(2). And employers are defined as "a person engaged in an industry affecting commerce" with either 15 or 25 or more employees, and "any agent of such person." § 12111(5)(A). At first glance, the DOT, as Knox's employer, is a covered entity for purposes of the ADA.

But, as the DOT maintains, the Eleventh Amendment protects the state and its agencies from suits. The Eleventh Amendment states that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the States by Citizens of another State…."[2] U.S. Const. amend. XI. This concept is known as "sovereign immunity," and it also protects an agency of the state, like the DOT. *See Nuñez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016).

This immunity is not absolute. As the DOT explains, three exceptions exist. First, Congress may affirmatively abrogate a state's immunity under Section 5 of the Fourteenth Amendment. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001). Second, a state, like Wisconsin, could waive its immunity and consent to suit in federal court. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000); *Blalock v. Ill. Dep't of Human Servs.*, 349 F. Supp. 2d 1093, 1096 (N.D. Ill. 2004) ("A State may effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving immunity to suit in the context of

---

[2] The text of the Amendment seemingly applies only to suits against a state by citizens of another state, but the United States Supreme Court has "extended the Amendment's applicability to suits by citizens against their own States." *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

a particular federal program."). Third, an individual state official is not immune from suit in federal court if the relief sought is prospective equitable relief; that is, the complaint seeks only forward-looking non-monetary remedies. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908). As the DOT correctly maintains, none of these exceptions apply to Knox's Title I claim.

As for the first exception, the Supreme Court has confirmed that Congress did not abrogate the states' Eleventh Amendment Immunity in Title I of the ADA. *See Garrett*, 531 U.S. at 360. As a matter of binding Supreme Court precedent, the first exception does not apply.

As for the second exception, Knox has cited nothing to suggest that Wisconsin has waived its own immunity for Title I lawsuits and the Court is unaware of any such waiver. Accordingly, that exception is also inapplicable. *See Kelsay v. Wis. State Pub. Defender*, No. 20-cv-1712-pp, 2022 WL 889389, at *5 (E.D. Wis. Mar. 25, 2022); *Henige v. Bd. of Regents of Univ. of Wis. Sys.*, No. 20-cv-6, 2021 WL 510403, at *9 (E.D. Wis. Feb. 11, 2021).

The third exception is for suits against individual state officials seeking prospective equitable relief. This exception rests on the notion "that sovereign immunity does not apply [where] an official … acts unconstitutionally [because he] is 'stripped of his official or representative character.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984) (quoting *Young*, 209 U.S. at 160). Knox's claims satisfy part of this exception. Knox's claim seeks prospective equitable relief, at least in part. (*See* ECF No. 1 at 12.) But the exception still does not apply because Knox's Title I claim is not and cannot be brought against an individual state actor. In her complaint, Knox has sued the DOT itself, not an individual state official. This was a sensible choice given that the ADA does not allow for suits seeking to impose individual liability. *See Silk v. City of Chi.*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) ("[T]he ADA provides only for employer, not individual, liability."). An individual can be sued under the ADA only in limited circumstances, where an individual defendant "independently meet[s] the ADA's definition of 'employer.'" *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279 (7th Cir. 1995). As mentioned above, an employer under the ADA is "a person engaged in an industry affecting commerce who has 15 or more employees … and any agent of such person."[3]

---

[3] While the "any agent" language seemingly suggests that individuals could be liable under the ADA, this language was actually meant to ensure that courts could impose *respondeat superior* liability to make employers liable for the acts of their employees and not necessarily to make the individuals themselves liable. *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995) (citing *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994)). Moreover, the type of prospective equitable relief Knox seeks is "only obtainable from an employing

§ 12111(5)(A). Even if Knox had pleaded facts alleging that an individual, like her supervisor, Reshadi, for example, was responsible for the actions leading to her claim, the facts alleged in the complaint do not encompass a situation in which such an individual could be held liable under the ADA. *See Silk*, 194 F.3d at 797 n.5; *Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995) ([T]he ADA's definition of 'employer,' … is simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents."). Therefore, the third exception to sovereign immunity does not apply. Because none of the exceptions could plausibly apply, Knox has failed to state a claim under Title I of the ADA.

## II. Knox Has Not Adequately Pleaded Facts to Support Potential Claims for Relief Under Title II or Title V.

In her opposition brief, Knox tries to salvage her complaint by referring to Titles II and V of the ADA and arguing that the DOT's sovereign immunity does not apply to those portions of the statute. (*See* ECF No. 15 at 5–6.) This effort is unavailing. Even if sovereign immunity did not apply to claims under those titles, Knox's complaint does not allege facts that would plausibly support a claim under Title II or Title V.

As noted above, Title II prohibits discrimination in public services. But the Seventh Circuit has made clear that Title II does not provide an alternate avenue for employment discrimination claims, which must be brought under Title I. *See Brumfield v. City of Chicago*, 735 F.3d 619, 622 (7th Cir. 2013) ("Title II of the ADA does not cover disability discrimination in public employment; this kind of claim must be brought under Title I."). Thus, Knox's effort to avoid sovereign immunity by reframing her Title I claim as a claim under Title II fails as a matter of law.

Knox's invocation of Title V fares no better. Title V prohibits retaliation or intimidation of individuals who assert their rights under the ADA. 42 U.S.C. § 12203; (*see also* ECF No. 15 at 5.) As an initial matter, the DOT likely enjoys sovereign immunity under Title V in addition to Title I. "Multiple courts have held that sovereign immunity bars retaliation claims under Title V of the ADA if the retaliation is premised on the Title I violation." *See Harris v. Martinez*, No. 22-cv-00373, 2023 WL 3504930, at *3 n.1 (N.D. Ill. May 17, 2023) (citing *Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir. 2001); *Morales v. New York*, 22 F. Supp. 3d 256, 269 (S.D.N.Y. 2014); *Collazo-Rosado v. Univ. of Puerto Rico*, 755 F. Supp. 2d 376, 383–84 (D.P.R. 2011)). Because

---

entity, not from a mere individual," thus even if Knox could sue a state official, that official would not be able to provide the relief sought. *See id.* (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994)).

Knox's claim for ADA retaliation is premised on her Title I claim, the DOT is probably immune from suit under both claims.

The Court need not definitively rule on the sovereign immunity issue for Knox's Title V claim, however. Even if the DOT were not immune, Knox has still failed to state a claim for ADA retaliation. Knox's complaint includes just three references to "retaliation" and in no instance plausibly alleges an actual claim of ADA retaliation. (*See* ECF No. 1 at 3, 6, 14.) These three isolated references are insufficient to provide the DOT adequate notice of any potential ADA retaliation claim. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.") (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)). Indeed, the DOT's brief in support of its motion to dismiss only addresses Title I, believing it to be "the only Title implicated here." (ECF No. 7 at 3.) After Knox cited "Section 12203" in her opposition brief, (ECF No. 15 at 5), the DOT argued in its reply that Knox had failed "to elaborate…how her suit invokes Title V," and that her "complaints of disability discrimination and retaliation pertain to her employment only and fall squarely within Title I of the ADA." (ECF No. 16 at 2.) The Court agrees. Knox has not adequately pleaded an ADA retaliation under Title V, even if such a claim were not barred by sovereign immunity.

## CONCLUSION

For the foregoing reasons, the DOT's motion to dismiss Knox's complaint is granted. Because Knox is proceeding without a lawyer, the Court will allow her the opportunity to file an amended complaint describing, if she can, plausible claims. The Court notes that Knox refers in passing to the Rehabilitation Act in her motion-to-dismiss briefing. (*See* ECF No. 15 at 5; ECF No. 17 at 2.) If she chooses to file an amended complaint, Knox may want to consider focusing on claims under the Rehabilitation Act, which may not be subject to the same sovereign immunity issues as her current efforts to invoke the ADA. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Knox is further advised that her amended complaint must include the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998).

**IT IS HEREBY ORDERED** that the DOT's motion to dismiss Knox's complaint, ECF No. 6, is **GRANTED**.

**IT IS FURTHER ORDERED** that if Knox wishes to proceed with this lawsuit, she must filed an amended complaint within **14 days** of the date of this order, or on or before **November 6, 2023**. If the Court does not receive Knox's amended complaint by that date, the Court will dismiss this case based on her failure to state a claim in her original complaint.

Dated at Milwaukee, Wisconsin on October 23, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge