UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALEXIA KNOX,

        Plaintiff,

v.                                                   Case No. 23-cv-0655-bhl

WISCONSIN DEPARTMENT OF TRANSPORTATION,

        Defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

        Plaintiff Alexia Knox is pursuing claims against her former employer, Defendant Wisconsin Department of Transportation (WDOT) under the Rehabilitation Act of 1973, 29 U.S.C. §794. Knox contends that WDOT discriminated against her and failed to provide reasonable accommodations for her disabilities. She also contends that it maintained a hostile work environment. After taking discovery, the parties have filed cross-motions for summary judgment. Because the record confirms that Knox is not a "qualified individual" within the meaning of the Rehabilitation Act, the Court concludes that WDOT is entitled to summary judgment on Knox's first two claims. Knox's third claim also fails because she has not come forward with evidence sufficient to support a finding that WDOT maintained a hostile work environment. Accordingly, WDOT's motion will be granted in full, Knox's motion will be denied, and the case will be dismissed.[1]

## FACTUAL BACKGROUND

        WDOT is a state agency that receives federal financial assistance. (ECF No. 43 ¶1.) It "supports all forms of transportation" and is responsible for planning, building, and maintaining Wisconsin's state and interstate highway system. Department Overview, WDOT, https://wisconsindot.gov/Pages/about-wisdot/who-we-are/dept-overview/default.aspx (last visited

---

[1] On December 18, 2024, Knox moved to supplement the record with new evidence. (ECF No. 44.) It is unclear how the proposed "new evidence" is relevant to the case and Knox offers no explanation to support her motion. Accordingly, her request will be denied.

July 9, 2025). Knox was employed by WDOT as a Communications Specialist from November 8, 2021 until May 3, 2022. (ECF No. 42 ¶1; ECF No. 46 ¶1.) In this role, she was responsible for servicing traffic operations by explaining technical and complex traffic operations as necessary; responding to inquiries from leadership, staff, media, legislators, and the public; and more. (ECF No. 38-1 at 2.) Because traffic never ceases, a Communications Specialist's duties run around the clock. (ECF No. 42 ¶¶2, 60; ECF No. 46 ¶¶2, 60.) A Communications Specialist serves as the sole support for Wisconsin's traffic management control room. (ECF No. 42 ¶¶2, 60; ECF No. 46 ¶¶2, 60.) The Communications Specialist assists in crafting the necessary communications for traveler information and warnings, monitoring weather sources to maintain situational awareness, providing necessary interviews, and drafting press releases. (ECF No. 38-1 at 4–5.) To provide this support, a Communications Specialist must work outside normal business hours prior to, during, and following major traffic incidents and severe weather events. (*Id.* at 1–2.) The job description for a Communications Specialist therefore specifically provides that WDOT may place the employee "on call" with limited or no notice. (*Id.*; ECF No. 42 ¶2; ECF No. 46 ¶2.)

During the short period of Knox's employment with WDOT, Anne Reshadi-Nezhad served as Traffic Systems and Management Engineering Section Chief in the Bureau of Traffic Operations and was Knox's supervisor. (ECF No. 42 ¶¶5–6; ECF No. 46 ¶¶5–6.) The two did not have an ideal working relationship. On December 2, 2021, Knox and Reshadi-Nezhad exchanged words over Knox's performance, although their reports of the confrontation differ. Reshadi-Nezhad contends that she chastised Knox in a conference room over several work-related issues and told Knox to work on her attitude. (ECF No. 42 ¶¶18–19.) According to Knox, Reshadi-Nezhad unfairly criticized her without provocation, called her frustrated, and accused her of having a bad attitude and being insubordinate. (ECF No. 31-1 at 109.)

Less than a week after this interaction, on December 6, 2021, Knox missed work due to a medical condition. (ECF No. 42 ¶25; ECF No. 46 ¶25.) Though Reshadi-Nezhad had told Knox to communicate via text, email, or phone call if Knox was going to work less than her scheduled eight hours, Knox failed to notify Reshadi-Nezhad of the absence. (ECF No. 42 ¶¶13, 26; ECF No. 46 ¶¶13, 26.) When Knox failed to show up, Reshadi-Nezhad called and emailed her multiple times, without success, to try to locate her. (ECF No. 42 ¶30; ECF No. 46 ¶30.) Knox emailed Reshadi-Nezhad the next day, saying that she would be absent December 8–10, 2021 due to her disability. (ECF No. 31-1 at 123.) Knox also requested contact information for human resources

to discuss reasonable accommodations. (*Id.*; ECF No. 42 ¶¶30–32, 34; ECF No. 46 ¶¶30–32, 34.) In response, Reshadi-Nezhad connected Knox with Ashley McGree, a Human Resources Specialist responsible for receiving, evaluating, and responding to disability accommodation requests. (ECF No. 42 ¶¶9–10, 34; ECF No. 46 ¶¶9–10, 34.)

On December 7, 2021, McGree emailed Knox general information about Medical Leave and Accommodations, and the two began working together to determine what accommodations Knox would need to perform her job duties. (ECF No. 42 ¶¶35–37; ECF No. 46 ¶¶35–37.) On December 9 and 12, 2021, McGree received documentation from Knox's medical providers asking that Knox be excused from work from December 6–10, 2021 and December 13–17, 2021. (ECF No. 42 ¶39; ECF No. 46 ¶39.) Knox's medical providers also asked that she be provided certain accommodations. (ECF No. 42 ¶40; ECF No. 46 ¶40.) Because the scope of the requested accommodations was unclear, McGree followed up with Knox's medical provider. (ECF No. 42 ¶¶43–44, 47; ECF No. 46 ¶¶43–44, 47.) While McGree waited to hear from Knox's doctors, WDOT provided Knox with indefinite administrative leave. (ECF No. 42 ¶¶48, 50, 54; ECF No. 46 ¶¶48, 50, 54.)

On January 19, 2022, Knox's medical provider sent documentation indicating that Knox had a permanent or long-term disability requiring several ongoing accommodations, including a restriction that she not be required to work outside normal business hours, not have frequent interruptions, not be on call, and not have a workspace near Reshadi-Nezhad. (ECF No. 31-1 at 68–69; ECF No. 42 ¶55; ECF No. 46 ¶55.) McGree sent the medical documents to Reshadi-Nezhad and another WDOT employee to determine if Knox's restrictions could be accommodated. (ECF No. 42 ¶56; ECF No. 46 ¶56.) The two determined that the requested accommodations were inconsistent with Knox's position as Communications Specialist and would require substantial changes to the department's operations. (ECF No. 42 ¶57; ECF No. 46 ¶57.) More specifically, they concluded that Knox's role as Communications Specialist required her to be available at any time and her accommodation requests were inconsistent with that requirement. (ECF No. 42 ¶60; ECF No. 46 ¶60.) They determined that any accommodations would require either (1) management to take on Knox's workload; (2) communications staff from another program to fill in for her; or (3) the reassignment of parts of Knox's role to staff who did not have communications experience. (ECF No. 42 ¶¶63–65; ECF No. 46 ¶¶63–65.)

On February 3, 2022, WDOT informed Knox that it could not accept her request for accommodations because they were incompatible with her position as a Communications Specialist. (ECF No. 42 ¶68; ECF No. 46 ¶68.) The parties worked together for a time to try and move Knox to another position, but no suitable position was found that Knox was willing to accept. (ECF No. 42 ¶¶71–73, 79, 88–90, 93–95; ECF No. 46 ¶¶71–73, 79, 88–90, 93–95.) On April 18, 2022, WDOT warned Knox that it was considering employment separation. (ECF No. 42 ¶¶94–95; ECF No. 46 ¶¶94–95.) On May 3, 2022, less than six months after she started, WDOT terminated Knox's employment. (ECF No. 42 ¶104; ECF No. 46 ¶104.)

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different characterizations of the facts, the Court must view the record in the light most favorable to the non-moving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

## ANALYSIS

Knox contends that WDOT violated the Rehabilitation Act by (1) discriminating against her based on her disability; (2) failing to provide her reasonable accommodations for her disabilities; and (3) maintaining a hostile work environment. Both parties seek summary judgment. Knox's briefing largely consists of a list of facts, without legal argument. (*See* ECF No. 31 at 2–6.) WDOT submits that Knox's first two claims fail as a matter of law because she is not a "qualified individual" within the meaning of the Rehabilitation Act. (ECF No. 41 at 11–16, 23.) WDOT also maintains that Knox's third claim fails because she has not provided evidence of a hostile work environment. (*Id.* at 25–29.) As explained below, the Court agrees with WDOT.

**I.    Knox's Discrimination and Reasonable Accommodation Claims Fail Because She Is Not a "Qualified Individual" Within the Meaning of the Rehabilitation Act.**

The Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. §794(a). Knox's first two claims, for discrimination and failure to accommodate, require her to establish that she is a "qualified individual" as that term is used in the statute. *See Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019); *see also Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022). An employee is a qualified individual if she can perform the "essential functions" of the job with or without reasonable accommodation. *Whitaker v. Wisconsin Dep't of Health Servs.*, 849 F.3d 681, 684 (7th Cir. 2017). As plaintiff, it is Knox's burden to prove that she was qualified to perform the essential functions of her job with or without reasonable accommodation. *See Branham v. Snow*, 392 F.3d 896, 905 (7th Cir. 2004).

WDOT maintains that the ability to work whenever necessary and be "on call" are essential job functions of the Communications Specialist role. (ECF No. 41 at 15.) In her response brief, Knox disputes that around-the-clock availability and being "on call" are essential functions of the role. (ECF No. 45 at 4–5.) The Seventh Circuit has confirmed that an employer's understanding of an essential function is correct, unless the employee provides sufficient evidence to rebut that understanding. *Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22d Jud. Cirs.*, 601 F.3d 674, 679 (7th Cir. 2010). Sufficient evidence includes the employer's judgment, the employee's written job description, the amount of time the employee spends performing the function, the consequences of not requiring the employee to perform the function, and the experiences of past and current workers. *Smithson v. Austin*, 86 F.4th 815, 820 (7th Cir. 2023).

It is undisputed that WDOT has always maintained that the essential functions of a Communications Specialist include the ability to work whenever necessary and be on call. (ECF No. 41 at 15; ECF No. 42 ¶57; ECF No. 46 ¶57.) It is also undisputed that Knox's written job description, signed by her on November 10, 2021, describes the position as being part of a program that requires work outside of normal business hours prior to, during, and following major traffic incidents and severe weather events. (ECF No. 38-1 at 1–2.) The description further provides that a Communications Specialist may be placed on call with limited or no notice during major traffic incidents and severe weather events. (*Id.* at 2.) These facts support the WDOT's contention that the ability to work whenever necessary, regardless of the day or time, is an essential job function of Knox's position.

In response, Knox argues that her Appointment Letter, sent on October 25, 2021, does not mention the ability to work whenever necessary or being on call. (ECF No. 45 at 4.) This argument carries limited weight given that, as Knox concedes, the Appointment Letter does not include any description of Knox's job duties. (*Id.*) Knox also insists that because she was not required to work outside of normal business hours or be on call every day, these requirements are not essential job functions. (*Id.* at 5.) She maintains that she was regularly scheduled 40-hour work weeks during typical working hours. (*Id.*) Knox is correct that, generally, the less time spent on a function decreases the likelihood the function is essential. *See Tate v. Dart*, 51 F.4th 789, 795 (7th Cir. 2022). But this does not preclude a job function from being essential. In *Vargas v. DeJoy*, 980 F.3d 1184 (7th Cir. 2020), the Seventh Circuit considered whether a plaintiff mail carrier with a foot injury that precluded him from lifting or carrying items that weighed more than fifteen pounds

was a qualified individual. *Id.* at 1187. The record confirmed that mail carriers must generally be able to carry up to thirty-five pounds in their shoulder bags. *Id.* The Seventh Circuit concluded that heavy lifting was an essential function, even though a mail carrier's load may not always weigh thirty-five pounds. *Id.* at 1188–89. The Court of Appeals explained that, if the plaintiff was not able to lift heavy items, the mail would not get delivered, making the job function essential. *Id.* at 1189.

Based on *Vargas*, WDOT has established that the ability to be available as necessary or otherwise on call is an essential function of the Communications Specialist role. That Knox was not always required to work outside normal business hours or to be on call is not dispositive. The record confirms that WDOT handles traffic emergencies, and there is undoubtedly a need for a response during said emergencies. (*See* ECF No. 42 ¶60; ECF No. 46 ¶60.) If WDOT granted Knox's request, no one would be available to support the traffic management control room in the event of a traffic emergency. (*See* ECF No. 42 ¶¶63–65; ECF No. 46 ¶¶63–65.) Knox has not overcome the presumption that the ability to work outside of normal business hours and be on call are essential job functions of a Communications Specialist.

To be a qualified individual under the Rehabilitation Act, Knox must show that she could provide availability outside normal business hours and be on call with or without a reasonable accommodation. *See Branham*, 392 F.3d at 905. Knox's requested accommodations explicitly prohibited her from working outside normal business hours and being put on call. (ECF No. 31-1 at 69; ECF No. 42 ¶55; ECF No. 46 ¶55.) The consequence of this request would have forced WDOT to assign someone else in a different role to fill in for Knox. (*See* ECF No. 42 ¶¶63–65; ECF No. 46 ¶¶63–65.) WDOT argues that this was an unreasonable request because it need not make someone else perform the essential functions of Knox's role. (ECF No. 41 at 15–16.) In her response brief, Knox does not explain why her request was reasonable or suggest any alternative accommodation that would allow her to perform the essential functions of her role. (*See* ECF No. 45 at 7–10.) Again, *Vargas* is instructive. There, the plaintiff requested that his employer allow him to be assigned routes that cut out lifting and carrying heavy loads, but the employer denied his request. 980 F.3d at 1187. The Seventh Circuit held that this was not a reasonable accommodation. *Id.* at 1189. The Court of Appeals noted that accommodating the plaintiff as he requested would force the employer to assign an essential function of the plaintiff's job to someone else. *Id.* And "[e]mployers need not reshuffle staff and resources if doing so would require

reallocating an essential function from the plaintiff to another worker." *Id.* Since the plaintiff put forth no reasonable accommodation that would allow him to lift the necessary weight, the Seventh Circuit affirmed that his Rehabilitation Act claim could not succeed. *Id.* at 1190.

As in *Vargas*, Knox's role as Communications Specialist required a person who would sometimes need to be available or on call outside of normal working hours. If Knox could not perform that job function, WDOT needed to reallocate that function to another worker. (ECF No. 31-1 at 69; ECF No. 42 ¶¶55, 63–65; ECF No. 46 ¶¶55, 63–65.) Reallocating the essential functions of Knox's role to another employee is an unreasonable accommodation. *See Vargas*, 980 F.3d at 1189. And Knox has suggested no other accommodation that would allow her to perform the essential functions of her position. This is an essential element of Knox's claims. Because Knox has not come forward with evidence that she could perform the essential functions of her role with a reasonable accommodation, she is not a qualified individual within the meaning of the Rehabilitation Act and cannot proceed on her claims of discrimination and failure to provide reasonable accommodations. Summary judgment will be granted to WDOT on both claims.

**II.      Knox Has Not Provided Evidence Supporting a Hostile Work Environment Claim.**

WDOT also argues that it is entitled to summary judgment on Knox's hostile work environment claim. WDOT contends that the Rehabilitation Act does not provide for a hostile work environment claim and that the Seventh Circuit has not expressly determined whether this claim exists. (ECF No. 41 at 25.) Knox does not address this argument in her summary judgment briefing. (*See* ECF No. 45.) The Court notes, however, that while WDOT is correct that the Seventh Circuit has not specifically ruled that the Rehabilitation Act provides for claims based on a hostile work environment, the Court of Appeals has on multiple occasions assumed that such a claim exists. *See Yochim v. Carson*, 935 F.3d 586, 593 (7th Cir. 2019); *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005); *Silk v. City of Chicago*, 194 F.3d 788, 803 (7th Cir. 1999). Accordingly, the Court will assume for purposes of this motion that such a claim exists. Nevertheless, because Knox has not provided sufficient evidence to move forward with her hostile work environment claim, WDOT is entitled to summary judgment.

To the extent a claim exists, the standard for asserting a hostile work environment claim under the Rehabilitation Act mirrors the standard under Title VII. *Mannie*, 394 F.3d at 982. For Knox to survive summary judgment, she must produce sufficient evidence demonstrating (1) she was subject to unwelcome harassment; (2) the harassment was based on her disability; (3) the

harassment was "so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment;" and (4) there is a basis for WDOT's liability. *See Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019) (citing *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018)).

Knox's own motion for summary judgment is premised on her December 2, 2021 interaction with Reshadi-Nezhad, an incident Knox characterizes as harassment. (ECF No. 31 at 2.) Knox also insists Reshadi-Nezhad harassed her on December 3, 2021, although she does not provide any details or cite any record evidence about any events on that date. (*See id.*) According to Knox, the harassment continued when Reshadi-Nezhad called and emailed Knox multiple times on December 6, 2021, after Knox failed to notify Reshadi-Nezhad of her absence. (*Id.* at 3.)

WDOT insists there is no evidence that Reshadi-Nezhad harassed Knox. (ECF No. 41 at 26–28.) It further argues that, even if Reshadi-Nezhad's interactions with Knox could be interpreted as harassment, Knox has provided no evidence that Reshadi-Nezhad's conduct was based on Knox's disability. (*Id.* at 27–28.)

The Court agrees with WDOT. Assuming Reshadi-Nezhad's interactions could be characterized as harassment, Knox still must show that Reshadi-Nezhad acted based on Knox's disability. *See Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 863 (7th Cir. 2005). The harassment need not explicitly bring up Knox's disability, but Knox's mere perception of discriminatory motivation is not enough. *See id.* Knox must show that the harassment has the "character or purpose" of targeting her disability. *See Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011).

Knox has provided no evidence to support the theory that said harassment was based on Knox's disability. Her written description of the altercation on December 2, 2021 merely states that she was "personally offended" by Reshadi-Nezhad's comments. (ECF No. 31-1 at 109.) And according to Knox, it was not until the end of the altercation that she informed Reshadi-Nezhad of her disability. (*Id.*) Given that Reshadi-Nezhad was unaware of Knox's disability at the time of the alleged harassment on December 2, 2021, any harassment could not have been based on Knox's disability. That incident, therefore, does not support a hostile work environment claim. And she provides no details concerning any interactions on December 3, 2021. Her written complaint to WDOT states that Knox "received multiple emails, meetings invites, Teams calls, messages and lists of tasks to complete" shortly after the December 2, 2021 incident, and that Knox "felt that the

new task assignments" were targeted at her disability. (*Id.* at 109–110.) But Knox's feelings of unfairness alone are insufficient to show discriminatory intent. *See Beamon*, 411 F.3d at 863. Moreover, Reshadi-Nezhad's emails and voicemails on December 6, 2021 came after Knox failed to notify Reshadi-Nezhad of her absence. At that time, Reshadi-Nezhad was unaware of where Knox was or why she was absent. (ECF No. 42 ¶¶26, 30; ECF No. 46 ¶¶26, 30.) The record confirms that the emails and calls were based on Knox's unexplained and unexpected absence, not on her disability. Accordingly, Knox's hostile work environment claim will be dismissed.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment, ECF No. 31, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment, ECF No. 36, is **GRANTED**. The case is dismissed. The Clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's motion to supplement the record, ECF No. 44, is **DENIED**.

Dated at Milwaukee, Wisconsin on July 10, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge